THOMPSON, J.
 

 The relators obtained from the Agricultural Credit Association
 
 *231
 
 money and supplies in the sum of $17,000' to enable them to operate their Front Lawn sugar plantation for the year 1925.
 

 They executed their note for said amount, payable December 31, 1925, to the order of said association.
 

 To secure the payment of the note, they gave a lien and pledge upon all of the crops grown upon the said plantation for said year and a chattel mortgage on the work animals and the other movable property situated on the plantation.
 

 As an additional security for the payment of the note, one Joseph Iaccuzzo became indorser, and joined in the act of pledge for the purpose of subordinating a mortgage prior in rank which he held against the Traínas.
 

 To protect the said indorser, the Traínas turned over to him, to be held as collateral, some unnamed securities amounting to $3,500.
 

 The act of pledge, among other things, contained the stipulation that all crops raised by the Traínas should be sold and delivered for the account of the Agricultural Association, and that all proceeds of such crops should be paid directly to said association, and by it imputed to the supply debt.
 

 The Traínas sold and delivered their cane crop for 1925 to the Ashland Planting Company, with instructions ‡0 turn the proceeds over to the Agricultural Association.
 

 The proceeds of the crop amounted to something over $26,000.
 

 The Ashland Planting Company made two payments to the Agricultural Association; one of said payments being made in November "and the other in December, 1925. The payments aggregated $6,486.63, leaving due the Agricultural Association $10,513.37 on the note of the Traínas.
 

 The Ashland Planting Company failed or became insolvent, and no further payments were made the association.
 

 On January 30, 1926, the Traínas brought suit against the Ashland Planting Company and the Agricultural Association for the proceeds of their cane crop, less the amount of the note for $17,000 held by the association.
 

 In that suit they also prayed for the cancellation and return to them of the said $17-000 note, alleging that the same had been paid and satisfied by the delivery of the crop to the planting company for the credit of the association.
 

 The suit went to trial in June, 1926, and resulted in a judgment against the planting company, but the demand against the Agricultural Association was rejected. From that judgment, the plaintiffs obtained what they claim was a suspensive ajjpeal.
 

 Thereafter the Agricultural Association sued Joseph Iaccuzzo as indorser of the note of $17,000 for the balance due thereon, and obtained judgment on February 6, 1928.
 

 From that judgment, the defendant Iaccuzzo perfected a devolutive appeal.
 

 A writ of fi. fa. was issued, and certain movable property belonging to Iaccuzzo was seized, and is held by the sheriff.
 

 Immediately following the seizure, the relators herein applied to the district court for a restraining order, and ultimately a preliminary injunction to stop the sheriff, the seizing creditor, and Iaccuzzo from proceeding further in the execution of the said judgment.
 

 It was alleged, as a basis for the injunction, that Iaccuzzo was about to settle and discharge the judgment rendered against him, and, in order to do so, that he proposed to dispose of the securities held by him belonging to the petitioners.
 

 It was further alleged that, until the question of petitioners’ indebtedness on the note and under the contract of pledge was finally determined on the appeal pending in the Supreme Court, the surety on their said note was ' without right or authority to pay any
 
 *233
 
 part of the judgment which had been obtained against him.
 

 The district judge declined to grant either the restraining order or the preliminary injunction, whereupon the relators invoked the supervisory jurisdiction of this court.
 

 In his return, the respondent judge says that he declined to grant the orders as prayed for, for the reason that to have done so would, in effect, be restraining Iaccuzzo from paying an executory judgment against himself. The judge did, however, offer to issue a restraining order and a rule on Iaccuzzo to show cause why he should not he enjoined from alienating or otherwise disposing of any of relators’ property he might have had in his possession, but relators refused such relief.
 

 It will he observed from the foregoing statement that the right to the restraining order and to the injunction to stay the execution of the judgment against Iaccuzzo is predicated primarily on the contention that the note on which Iaccuzzo was indorser had been paid by the makers.
 

 Whether the contention is weU founded or not depends on the proper construction of the clause in the act of pledge which declares that:
 

 “All crops shall be sold and delivered for account of the lender, with all proceeds paid directly to it; and as said proceeds accrue, they shall be imputed, at the lender’s option.
 

 If the relators’ construction of that provision is correct, and that they were released when cane sufficient in amount to pay for the advances had been delivered to the Ashland Planting Company then it followed as a matter of course that the discharge of the 'note likewise discharged the indorser.
 

 If on the other hand, the Ashland Planting Company was not made the agent of the Agricultural Credit Association, then the crop and its proceeds were at the risk of the Traínas, until turned over to the said creditor. In such event, the note was not discharged. This was the view taken by. the trial judge.
 

 We shall not anticipate, and are not called upon to decide, that question in the present proceeding. It suffices to say that the relators had their day in court in their suit against the Agricultural Association and in the suit of the association against the indorser.
 

 In both suits the question of whether the note had been discharged by the delivery of the crop to the Ashland Planting Company for the account of the Agricultural Association was expressly put at issue, and in both suits was decided against the contention of relators.
 

 The relators had the right to suspensively appeal from the judgment rendered against their surety, but they failed to apply for such appeal.
 

 Instead, they now seek the supervisory powers of this court as a substitute for the appeal they should have taken.
 

 It is well settled that prohibition is not a writ of right, that the issuance of such writs rests largely within the discretion of the court, and are never granted as a substitute for an appeal, or where there is an adequate remedy by appeal, except in chses of extreme emergency. Jenkins v. Salmen Brick Co., 148 La. 30, 86 So. 601.
 

 The rule is likewise well settled that matters which have been, or which could have been, urged by way of defense on the original trial of a case, and on appeal from the judgment in the case, afford no grounds for enjoining the execution of the judgment. O’Connor v. Sheriff, 30 La. Ann. 441.
 

 In Mahan v. Accommodation Bank, 26 La. Ann. 34, it was said:
 

 “There is no principle better settled than, that a party is not allowed to arrest an execution on grounds that he might have set up in the original suit.”
 

 
 *235
 
 See, also, Dayton v. Bank, 6 Rob. 17; Greene v. Johnson, Sheriff, 21 La. Ann. 464.
 

 The rule nisi is recalled, and relators’ application is dismissed.